Matt Dunn, Esq. (pro hac vice)
mdunn@getmansweeney.com
Lesley Tse, Esq. (pro hac vice)
ltse@getmansweeney.com
**GETMAN, SWEENEY & DUNN, PLLC**
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370
Facsimile: (845) 255-8649

Benjamin Schonbrun
schonbrun.ben@gmail.com
Michael D. Seplow
mseplow@gmail.com
Aidan C. McGlaze
amcglaze@sshhlaw.com
**SCHONBRUN SEPLOW
HARRIS & HOFFMAN LLP**
11543 W. Olympic Blvd.
Los Angeles, CA 90064
Telephone: (310) 396-0731
Facsimile: (310) 399-7040

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR CASTRO and FRANCINE NICHOLSON, on behalf of themselves and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SWIFT TRANSPORTATION COMPANY, SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, SWIFT TRANSPORTATION SERVICES, LLC, and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 2:16-cv-03232 AB(Ex) <br><br> Assigned to: Hon. Andre Birotte, Jr. <br><br> **COLLECTIVE ACTION** <br><br> **BRIEF IN SUPPORT OF PLAINTIFFS' UNCONTESTED NOTICE OF MOTION AND MOTION FOR COURT APPROVAL OF THEIR FLSA SETTLEMENTS** <br><br> Hearing Date and Time: April 17, 2017 at 10:00 a.m. |

1

**Table of Contents**

2   TABLE OF AUTHORITIES ...................................................................... ii

3   I.   PROCEDURAL AND FACTUAL HISTORY .................................... 1

4     A. The Litigation ............................................................................ 3

5     B. Settlement .................................................................................. 4

6   II.  LEGAL STANDARD .......................................................................... 7

7     A. A Bona Fide Dispute Exists Between the Parties ...................... 8

8     B. The Proposed Settlement Is Fair and Reasonable ..................... 9

9        1.   The Settlement Is the Result Of Arm's-Length Negotiations .................... 9

10       2.   The Settlement Considers Plaintiffs' Litigation Risks ............... 10

11       3.   Plaintiffs' Recovery Is Fair and Reasonable ............. 10

12       4.   The Settlement's Release Provision Is Proper ....................... 12

13    C. The Service Awards to the Named Plaintiffs Are Fair And

14       Reasonable ............................................................................ 12

15   III. THE COURT SHOULD APPROVE THE AGREED UPON

16       ATTORNEYS' FEES AS REASONABLE ....................................... 14

17    A. The Attorneys' Fees Are Reasonable Because All the Plaintiffs

18       Agreed to Them ....................................................................... 15

19    B. Fees of One Third of the Settlement Fund Are Reasonable ............. 16

20    C. Costs ....................................................................................... 21

21   IV. CONCLUSION ................................................................................ 21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*A.H. Phillips v. Walling,* 324 U.S. 490 (1945) ..........................................................14

*Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240 (1975) ...................................15

*Ambrosino v. Home Depot U.S.A, Inc.*, 11 Civ. 1319 L MDD,
  2014 WL 3924609 (S.D. Cal. Aug. 11, 2014)...............................................passim

*Banales v. Autoclaims Direct, Inc.,*
  3:11 Civ. 02914, Dkt. 63 (Dec. 20, 2012) ...............................................15, 17, 19

*Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981)..............7, 18

*Boyd v. Bank of Am. Corp.*, 13 Civ. 0561-DOC,
  2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ..................................16, 18, 19, 20

*Bredbenner v. Liberty Travel, Inc.*, 09 Civ. 1248 MF,
  2011 WL 1344745 (D. N.J. Apr. 8, 2011)...........................................................17

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 706 (1945) ............................................7

*Campanelli v. Hershey Co.*, C 08–1862 BZ,
  2011 WL 3583597 (N.D. Cal. May 4, 2011) .........................................................8

*Campbell v. C.R. Eng., Inc.,* 2:13 Civ. 00262,
  2015 WL 5773709 (D. Utah Sept. 30, 2015) .......................................................15

*Costa v. Commissioner of Social Sec. Admin.*,
  690 F.3d 1132 (9th Cir. 2012)......................................................................19, 20

*Craft v. Cnty. of San Bernardino*, 624 F.Supp.2d 1113 (C.D. Cal. 2008) ...............20

*Curtis-Bauer v. Morgan Stanley & Co. Inc.*, C-06-3903 TEH,
  2008 U.S. Dist. LEXIS 91465 (N.D. Cal. Oct. 22, 2008) ...................................13

*Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper,* 445 U.S. 326 (1980) ...............14

*Diaz v. Scores Holding Co., Inc.,* 07 Civ.
  8718 WL 6399468 (S.D. N.Y. Jul.11, 2011).......................................................10

*Elliott v. Rolling Frito-Lay Sales, LP*, 11 Civ. 01730 DOC,
  2014 WL 2761316 (C.D. Cal. June 12, 2014)................................................15, 19

*Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) ........................12

*Flores v. Swift Trans. Co.*,

    2:14 Civ. 02900-AB-E, Dkt. 121 (C.D. Cal. May 11, 2016) ......................passim

*Garner v. State Farm Mut. Auto. Ins. Co.*, 08 Civ. 1365 CW (EMC),

    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ...................................14

*Glass v. UBS Fin. Services, Inc.*, 06 Civ. 4068 MMC,

    2007 WL 221862 (N.D. Cal. Jan. 26, 2007)

    *aff'd*, 331 Fed. Appx. 452 (9th Cir. 2009)....................................13, 14

*Goodwin v. Citywide Home Loans, Inc.*,

    8:14 Civ. 00866-JLS-JCG, Dkt. 66 (C.D. Cal Nov. 2, 2015) .....................passim

*Goudie v. Cable Commun., Inc.*, 08 Civ. 507-AC,

    2009 WL 88336 (D. Or. Jan. 12, 2009)...........................................9

*Graham v. Overland Solutions, Inc.*, 10 Civ. 0672 BEN,

    2012 WL 4009547 (S.D. Cal. Sept. 12, 2012) ..................................13

*Hand v. Dionex Corp.*, 06 Civ. 1318-PHX-JAT,

    2007 WL 3383601 (D. Ariz. Nov. 13, 2007) ...................................10

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...........21

*In re Media Vision Tech Sec. Litigs.*, 913 F. Supp. 1362 (N.D. Cal. 1996).............21

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015).................16

*Jones v. Agilysys, Inc.*, 12 Civ. 03516 SBA,

    2014 WL 2090034 (N.D. Cal. May 19, 2014) ..................................11

*Khanna v. Intercon Sec. Sys., Inc.,* 2:09 Civ. 2214 KJM EFB,

    2014 WL 1379861 (E.D. Cal. Apr. 8, 2014) order corrected, 2:09 Civ.

    2214 KJM EFB, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015) ...........................17

*Knight v. Red Door Salons, Inc.*, 08-01520 SC,

    2009 WL 248367 (N.D. Cal. Feb. 2, 2009).....................................16

*Lee v. The Timberland Co.*, C 07-2367,

    2008 WL 2492295 (N.D. Cal. Jun 19, 2008) ....................................8

*Lewis v. Wells Fargo & Co.*,

    08 Civ. 2670, Dkt. 315 (N.D. Cal. April 29, 2011)....................................9, 10, 13

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ...........7, 8

*Ma v. Covidien Holding, Inc.*, 12 Civ. 02161-DOC (RNBx),

    2014 WL 360196 (C.D. Cal. 2014) ...................................................................11

*Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247 (5th Cir. 2012)

    *cert. denied,* 133 S. Ct. 795, 184 L. Ed. 2d 583 (2012) .......................................7

*Mills v. Electric Auto-Lite Co*., 396 U.S. 375 (1970)...............................................21

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008)...............................20

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004) .....................................................................11

*Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324 (N.D. Cal. 2014) ...............................9

*Otey v. CrowdFlower, Inc.*, 12 Civ. 05524–JST ,

    2014 WL 1477630 (N.D. Cal. 2014) ...................................................................8

*Otey v. CrowdFlower, Inc.*, 12 Civ. 05524-JST,

    2016 WL 304747 (N.D. Cal. Jan. 26, 2016) ........................................................8

*Rodriguez v. SGLC Inc.*, 2:08 Civ. 1971-MCE-KJN,

    2014 WL 229221 (E.D. Cal. Jan. 17, 2014)........................................................16

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .................................12

*Satchell v. Fed. Express Corp.*, C-03-2659 SI, C-03-28 SI,

    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ....................................................14

*Smith v. Alamo Claim Service, et al.*,

    1:13 Civ. 01481, Dkt. 179 (C.D. Ill. Nov. 16, 2016) ..........................................16

*Stevens v. Safeway, Inc*.,

    2:05 Civ. 01988-MMM-SH, Dkt. 338 (C.D. Cal. Feb. 25, 2008).......................13

*Stuart v. Radioshack Corp.*, 07 Civ. 4499 EMC,

    2010 WL 3155645 (N.D. Cal. Aug. 9, 2010).....................................................13

*Trauth v. Spearmint Rhino Companies Worldwide, Inc.*,

    EDCV 09-01316-VAP, 2012 WL 4755682 (C.D. Cal. Oct. 5, 2012) ................. 8

*Trinh v. JPMorgan Chase & Co.,* 07 Civ. 01666,

    2009 WL 532556 (S.D. Cal. Mar. 03, 2009)....................................................... 8

*Van Vranken v. Atl. Richfield Co.,* 901 F.Supp. 294 (N.D. Cal. 1995).................... 20

*Vandervort v. Balboa Capital Corp.*, 8 F.Supp.3d 1200 (C.D. Cal. 2014)............... 16

*Velez v. Majik Cleaning Service, Inc.*, 03 Civ. 8698(SAS)(KNF),

    2007 WL 7232783 (S.D. N.Y. June 25, 2007)................................................... 13

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ................................... 20

*Yue Zhou v. Wang's Rest.*, C 05-0279 PVT,

    2007 WL 2298046 (N.D. Cal. Aug. 8, 2007) ..................................................... 8

**Statutes**

29 U.S.C. § 202(a) ..................................................................................................... 7

29 U.S.C. § 215(b) ..................................................................................................... 7

29 U.S.C. § 255............................................................................................................ 9

**Treatises**

NERA Economic Consulting, "Trends in Wage and Hour Settlements:

    2015 Update"........................................................................................................ 11

The Named and opt-in Plaintiffs submit this brief in support of their uncontested motion for approval of the settlement of the Fair Labor Standards Act ("FLSA") claims raised in this case. Each of the seven Plaintiffs who have brought claims in this action have signed an individual settlement agreement with Swift resolving his or her FLSA and state wage-and-hour claims in their entirety. The settlement terms are the same as the Court approved settlement for the 41 plaintiffs in *Flores v. Swift Transportation Company*, 2:14 Civ. 02900-AB-E (C.D. Cal.). Now the seven Plaintiffs in this case respectfully request that the Court approve their settlements, including their individual recoveries, service awards, and the attorneys' fees and costs.

## I.    PROCEDURAL AND FACTUAL HISTORY

The Named Plaintiffs brought this action as a FLSA collective action on behalf of themselves and other customer service representatives ("CSRs") employed by Swift who were paid a salary but not overtime wages for hours worked more than 40 in a workweek. Complaint, Dkt. 1 (filed May 11, 2016); Amended Complaint, Dkt. 61 (filed October 28, 2016). Named Plaintiff Castro also brought individual California state law claims for unpaid wages. Dkt. Nos. 1 and 61. And Named Plaintiff Nicholson brought individual Arizona state law claims for violating Arizona's wage act. Dkt. 61. Swift denied Plaintiffs' allegations and raised 27 affirmative defenses. Dkts. 29 and 62.

Early in the case Plaintiffs moved to conditionally certify a FLSA collective action. Dkt. No. 28 (filed June 17, 2016). Swift opposed Plaintiffs' motion and also moved the Court to compel Named Plaintiff Castro and an opt-in to bring their claims individually in arbitration.[1] Dkts. 40 and 41. In response to Swift's motion, Plaintiffs moved to amend the complaint to include another Named Plaintiff who did

---

[1] At Swift's request, Plaintiffs agreed to a briefing schedule and in return Swift agreed to toll the FLSA and state statutes of limitation. Dkt. 32.

1  not sign an arbitration agreement. Dkt. 50. The Court granted Plaintiffs' motion to
2  amend but denied the other motions as moot. Dkt. No. 58.

3       Shortly after the Court's order, Plaintiffs refiled their motion for FLSA
4  certification. Dkt. No. 63. Once again Swift opposed Plaintiffs' motion, but this time
5  did not move to compel arbitration. Dkt. 66. Three days before the hearing on
6  Plaintiffs' motion, the Parties' agreed to attend mediation. Dkt. 70.[2] The Parties then
7  reached a settlement before the Court had an opportunity to rule on the motion.

8       Before the Ninth Circuit *Morris v. Ernst & Young, LLP*, 13 Civ. 16599, 2016
9  WL 4433080 (9th Cir. Aug. 22, 2016) decision, the Parties developed a process to
10  avoid filing consents to sue in federal court for CSRs whose claims would have to
11  be brought in arbitration. The process provided that Plaintiffs identify each person
12  seeking to join the action before filing a consent to sue in federal court. Swift then
13  had an opportunity to present signed agreements for anyone seeking to join the
14  action. Plaintiffs could then raise any defenses to the enforcement of the agreement.
15  Claims of CSRs who signed an arbitration agreement and did not raise a defense
16  were not filed in federal court. Those CSRs were given the opportunity to bring their
17  claims in arbitration. Claims of CSRs for whom Swift did not present a valid
18  arbitration agreement were filed in this case. Declaration of Matt Dunn ("Dunn
19  Decl."), ¶ 6.

20       Twenty CSRs brought claims in either this action or in an individual
21  arbitration. Of those twenty, thirteen filed their claims in individual arbitration. An
22  additional seven CSRs filed their claims in this action. The twenty CSRs who
23  brought claims worked in seven different terminals with most working in Swift's
24  customer service center in Memphis, Tennessee. Dunn Decl. ¶ 7.

25

26

27

28
---
[2] Once again Swift agreed to toll the FLSA and state statutes of limitations.

## A.   The Litigation

This case evolved from the prior round of litigation in *Flores v. Swift Trans. Co.*, 2:14 Civ. 02900-AB-E (C.D. Cal.). In 2014 a group of CSRs brought the same FLSA claims against Swift. Like this case, the Parties litigated both in federal court and in arbitration. During that litigation, Swift changed its pay practices to pay CSRs overtime wages for overtime work. After less than two years of litigation, 74 CSRs (33 in arbitration and 41 in this Court) resolved their overtime claims with Swift. And this Court approved the settlement, including service payments and attorneys' fees and costs, on behalf of the 41 CSRs who asserted their claims in this Court. *Flores v. Swift Trans. Co.*, 2:14 Civ. 02900-AB-E, Dkt. 121 (C.D. Cal. May 11, 2016).

Like *Flores*, although the Parties litigated the class claims on two tracks— individual arbitrations and federal court collective action—the work overlapped in substantial part. Plaintiffs conducted investigations into each Class Member's claims, whether their claims were in arbitration or federal court. Because opt-in and arbitration Class Members often worked in the same terminals, they provided crucial facts and were developed as fact witnesses for each other. Dunn Decl. ¶ 8. Plaintiffs expected to apply discovery regarding Swift's wage-and-hour practices, CSR scheduling, CSR job duties, class member supervision, records of hours worked, good faith and willfulness, company depositions, depositions of fact witnesses, depositions of supervisors at Swift's main terminals where many of the class members worked, exhibit and witness lists, and stipulations of fact to claims brought in the other arbitrations and arbitration and in federal court. As part of this discovery, the Plaintiffs took twelve depositions, including four 30(b)(6) depositions and eight managers/supervisors who worked in terminals located in Tennessee, Colorado, and Texas. At the time the case settled, Plaintiffs had scheduled and were prepared to defend and take several additional depositions at locations around the country. Because Plaintiffs worked in different terminals throughout the country,

1  Plaintiffs took discovery in many different locations. Swift also took depositions,
2  deposing five CSRs who worked in terminals located in Tennessee, Colorado, and
3  Texas. Dunn Decl. ¶ 9.

4       Thirteen members brought their claims in individual arbitrations before the
5  American Arbitration Association. The Parties selected arbitrators, submitted case
6  management plans, participated in case management conferences, and scheduled
7  merits hearings in the thirteen arbitrations. The Parties tried three cases. Those trials
8  took place in Tennessee, Colorado, and Texas and occurred over the course of six
9  days. The Parties filed pre- and post-hearing briefs and also argued motions in
10 limine. An additional ten hearings were scheduled to continue from January 2017
11 into June 2017. In each of the thirteen cases, Claimants provided Swift with an
12 explanation of their claims, sought and received discovery, and provided damage
13 calculations under both the FLSA and any applicable state law. In several cases, the
14 Parties noticed and conducted depositions and engaged in motion practice. Dunn
15 Decl. ¶ 10.

16      The Parties litigated the action in federal court as well. In addition to
17 responding to Swift's motions to dismiss and to compel arbitration, Plaintiffs moved
18 to amend the complaint and for conditional certification of the FLSA collective
19 action. They also engaged in extensive discovery for the opt-in Plaintiffs in the
20 collective action in federal court. Plaintiffs served discovery demands on Swift,
21 including interrogatories, requests for documents and ESI, and requests to admit.
22 Overall, Swift produced thousands of pages of documents and ESI, including wage
23 records. Here, the Parties met and conferred about Swift's discovery production.
24 Also, in order to resolve discovery disputes before upcoming arbitration hearings,
25 CSRs moved to compel documents. Dunn Decl. ¶ 11.

26 **B.    Settlement**

27      After actively and aggressively litigating this case and the individual
28 arbitrations, and before the hearing on Plaintiffs' collective action motion, the

Parties agreed to mediate the claims. Using the Swift produced opt-in plaintiffs wage records, combined with individual Class Member interviews, Plaintiffs' Counsel developed a damages model that calculated each Class Member's damages on a week-by-week basis. Dunn Decl. ¶ 12. Plaintiffs' Counsel provided Swift with damage calculations showing Class damages with counsel's fees and costs listed separately. The damages represented the maximum amount each Class Member could recover if he or she prevailed at trial on every issue. Dunn Decl. ¶ 13.

The Parties attended a day-long mediation, on January 25, 2017, in Phoenix, Arizona, before a well-respected and experienced mediator, Michael J. Leech from Chicago, Illinois. Although the Parties did not reach a settlement during the mediation, the Parties, with the mediator's assistance, continued negotiations. Finally, after eight days of additional negotiations, the Parties agreed on a monetary value for the settlement. Over the next month, the Parties negotiated and finalized the non-monetary settlement terms. The terms are largely the same as the *Flores* settlement. Dunn Decl. ¶ 14.

Each Class Member's recovery, whether the claims were brought in federal court or in arbitration, was individually calculated at the maximum statutory recovery based on his or her number of weeks worked, hours worked each week, rate of compensation, and any applicable state law damages in addition to FLSA damages. The settlement incorporated the risks for each claim including: 1) the risk that Swift would be successful with its affirmative defense that Plaintiffs were FLSA exempt under one of the white-collar exemptions; 2) the risk that class members would not be able to prove all the overtime hours they claimed to have worked; 3) the risk that class members would not be able to establish a third year of FLSA liability by proving that Swift willfully violated the law; 4) the risk that Swift would be able to avoid liability for liquidated damages; and 5) the risk that class members would not able to establish the prerequisites for state law claims. The damage calculations also included a multiplier for the value of receiving payment

without having to wait for the litigation to take its course. The damages model applied the various risk discounts to determine a fair settlement on behalf of the class members. Attorneys' fees and costs were provided on a separate line from the aggregate Class Member damages. Dunn Decl. ¶ 15.

Ultimately, Swift agreed to pay $331,613.68 to resolve the claims of the 7 Class Members including the fees and costs associated with the claims.[3] Under the allocation, Class Members recover $198,209.68 in back wages and statutory damages; one-third of the total settlement, $110,538, is allocated as attorneys' fees; $2,866 is allocated as costs (although costs of the action actually exceed that amount), and $20,000 is allocated as service payments for the Named Plaintiffs who acted as class representatives throughout the litigation and settlement negotiations. Dunn Decl. ¶ 16.

Each Class Member received an individual settlement agreement that provided the specific amount the Class Member will receive in unpaid wages and liquidated damages, and the specific amount Swift will pay in attorneys' fees and costs apportioned to their claim. The individual Settlement Agreements were accompanied by a letter from Counsel explaining the total amount of the settlement and how the settlement was allocated among Class Members, attorneys' fees and costs, and service payments. Plaintiffs' Counsel has been in communication with all Class Members and responded to any of their questions and concerns. All of the Class Members approved their recovery, the settlement terms, and the amount of fees, costs, and service payments. Dunn Decl. ¶ 17.

In return for their recovery, each Class Member agrees to release claims "based on the Company's failure to pay her overtime wages and any related claims regarding wages or classification that were raised in the Complaint in this action[.]" Depending on the state in which the Class Member worked, the agreement also

---

[3] Additional amounts were paid to the thirteen CSRs who brought their claims in arbitration.

1  provides specific language for any state wage and hour claims that the Class
2  Member released. The release does not apply to any claims arising after the date the
3  Class Member signs the agreement. Dunn Decl. ¶ 18.

4      Every one of the 20 Class Members agreed to the settlement and signed an
5  individual settlement agreement. Class Members who brought their claims in
6  arbitration will receive their settlement payments within the week and then those
7  claims will be dismissed. The Named and opt-in Plaintiffs in this action now ask the
8  Court to approve their settlements. Upon the Court's approval, Swift will issue
9  settlement checks and Plaintiffs' Counsel will distribute the checks to the Plaintiffs.
10 Dunn Decl. ¶ 20.

11 **II.    LEGAL STANDARD**

12     The FLSA was designed to protect workers from "substandard wages and
13 oppressive working hours, 'labor conditions [that are] detrimental to the
14 maintenance of the minimum standard of living necessary for health, efficiency and
15 general well-being of workers.'" *Barrentine v. Arkansas-Best Freight System, Inc.*,
16 450 U.S. 728, 739 (1981) *quoting* 29 U.S.C. § 202(a). Thus, in order to protect
17 workers, typically a FLSA claim cannot be waived or settled except in two
18 circumstances. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945). The
19 exceptions are (1) that the Secretary of Labor supervises the back wage payments;
20 or (2) that the court approves the proposed settlement between the employer and
21 employees. 29 U.S.C. § 215(b); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d
22 1350, 1353-54 (11th Cir. 1982).[4]

23     While the Ninth Circuit has not established the criteria that a district court
24 must consider in evaluating an FLSA settlement, most courts have adopted the

---

26 [4]  The Fifth Circuit has found that under some circumstances, private FLSA
27 settlements can bind parties even without court or Department of Labor approval.
28 *See Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2012)
   *cert. denied,* 133 S. Ct. 795, 184 L. Ed. 2d 583 (2012) (citations omitted).

*Lynn's Food Stores* standard. *See Otey v. CrowdFlower, Inc.*, 12 Civ. 05524–JST, 2014 WL 1477630, at *3 (N.D. Cal. 2014) (collecting cases). Under *Lynn's Food Stores* an FLSA settlement must (1) involve the resolution of a bona fide dispute over an FLSA provision; and (2) the settlement must be fair and reasonable. *Flores v. Swift Trans. Co.*, 2:14 Civ. 02900-AB-E, Dkt. 121 (C.D. Cal. May 11, 2016); *Goodwin v. Citywide Home Loans, Inc.*, 8:14 Civ. 00866-JLS-JCG, Dkt. 66, p. 4 (C.D. Cal Nov. 2, 2015) (*quoting Lynn's Food Stores*); *Trinh v. JPMorgan Chase & Co.,* 07 Civ. 01666, 2009 WL 532556, at *1 (S.D. Cal. Mar. 03, 2009); *Lee v. The Timberland Co.*, C 07-2367, 2008 WL 2492295, at *2 (N.D. Cal. Jun 19, 2008); *Yue Zhou v. Wang's Rest*., C 05-0279 PVT, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007). A court's involvement in the settlement of FLSA claims "has less to do with the due process rights of those to be bound by a settlement, and more to do with the named plaintiffs' interest in vigorously pursuing the litigation and the district court's interest in 'managing collective actions in an orderly fashion.'" *Trauth v. Spearmint Rhino Companies Worldwide, Inc.*, EDCV 09-01316-VAP, 2012 WL 4755682, at *5 (C.D. Cal. Oct. 5, 2012); *accord Goodwin*, 8:14 Civ. 00866-JLS-JCG at p. 3; *Campanelli v. Hershey Co.*, C 08–1862 BZ, 2011 WL 3583597, at *1 (N.D. Cal. May 4, 2011). "'If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . that are actually in dispute,' the district court may 'approve the settlement in order to promote the policy of encouraging settlement of litigation.'" *Otey v. CrowdFlower, Inc.*, 12 Civ. 05524-JST, 2016 WL 304747, at *3 (N.D. Cal. Jan. 26, 2016) *quoting Lynn's Food Stores*, 679 F.2d at 1354.

## A.   A Bona Fide Dispute Exists Between the Parties

This litigation included several bona fide disputes ranging from whether Class Members are due overtime wages at all to the correct measure of damages. The issues were actively litigated in arbitrations across the country and in federal court over the course of more than a year. For example, Swift denied that Class Members were due any overtime wages at all and maintained throughout the litigation that

CSRs were properly classified as exempt from the FLSA and state law overtime requirements. Dkt. 62, Eleventh Affirmative Defense. It raised an affirmative statute of limitations defense that could have reduced recovery of FLSA claims from three to two years. Dkt. 62, Second Affirmative Defense. *See* 29 U.S.C. § 255 (providing for a two-year statute of limitations unless employee can establish employer acted willfully). Swift also raised a good faith defense to paying liquidated damages. Dkt. 62, Sixth Affirmative Defense. Moreover, Class Members had an affirmative burden to establish the overtime hours that they worked and Swift's knowledge of the work, Dkt. 62, Tenth Affirmative Defense, and all the prerequisites of their claims under the wage-and-hour laws of California, *see, e.g.*, Dkt. 62, Eighth, Ninth and Eleventh Affirmative Defenses. *See*, *Goodwin*, 8:14 Civ. 00866-JLS-JCG, Dkt. 66, p. 4 (C.D. Cal Nov. 2, 2015) ("Given that several Plaintiffs worked remotely and Citywide did not maintain employee time records, Plaintiffs would face obstacles when establishing damages"). There is no question that bona fide disputes exist between the Parties.

### B.    The Proposed Settlement Is Fair and Reasonable

In determining fairness, courts consider the settlement negotiations between the Parties, the settlement amount to be paid to class members, the individual settlement amounts to each class member, the scope of the release, and the litigation risks. *Ambrosino v. Home Depot U.S.A, Inc.*, 11 Civ. 1319 L MDD, 2014 WL 3924609, at *1 (S.D. Cal. Aug. 11, 2014); *Goudie v. Cable Commun., Inc.*, 08 Civ. 507-AC, 2009 WL 88336, at *1 (D. Or. Jan. 12, 2009). All these factors establish this settlement as fair.

### 1.    The Settlement Is the Result Of Arm's-Length Negotiations

When a settlement is the result of arm's-length negotiations and with the assistance of a mediator then the settlement is presumed "to be the product of serious, informed, non-collusive negotiations." *Nen Thio v. Genji, LLC*, 14 F.Supp. 3d 1324, 1334 (N.D. Cal. 2014). *See also*, *Lewis v. Wells Fargo & Co.*, 08 Civ.

2670, Dkt. 315, p. 4 (N.D. Cal. April 29, 2011) ("The assistance of an experienced mediator in the settlement process confirms that the Settlement is non-collusive"); *Diaz v. Scores Holding Co., Inc.,* 07 Civ. 8718, 2011 WL 6399468, at *2 (S.D. N.Y. Jul.11, 2011) ("In FLSA settlements . . . arm's length negotiations involving counsel and a mediator raise a presumption that the settlement achieved is procedurally fair, reasonable, adequate, and not a product of collusion."). Here, the proposed Settlement resulted after three arbitration hearings, significant discovery, and arm's length negotiations between experienced counsel with the assistance of a seasoned mediator after the litigation had proceeded to a stage where both sides could assess their risks and liability. Accordingly, there is a presumption that the settlement is fair and reasonable. *Lewis*, 08 Civ. 2670, Dkt. 315, p. 4 (N.D. Cal. April 29, 2011).

### 2. The Settlement Considers Plaintiffs' Litigation Risks

FLSA settlements are fair and reasonable when plaintiffs' counsel considers the various risks and uses the employees' individual wage and hour data. *Ambrosino*, 2014 WL 3924609, at *2 (S.D. Cal. Aug. 11, 2014); *Hand v. Dionex Corp.*, 06 Civ. 1318-PHX-JAT, 2007 WL 3383601, at *1 (D. Ariz. Nov. 13, 2007) (settlement was fair because "the distribution directly relates to each Plaintiff's length of employment with Defendant."). As described above, this case involved several bona fide disputes, anyone of which could have substantially reduced the class recovery. The Settlement reflects these litigation risks. *Lewis,* 08 Civ. 2670, Dkt. 315, p. 4 (N.D. Cal. April 29, 2011) (finding a settlement was fair and reasonable in part because the allocation was related to the risks in the case). Further, as described above, the Settlement uses Class Members' individual wage and hour data supplied by Swift in discovery.

### 3. Plaintiffs' Recovery Is Fair and Reasonable

Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal.

1  2004). In this case, each Class Member will recover a significant percentage of their
2  total maximum damages. The average recovery is $28,315.67, and on average Class
3  Members will recover 46% of the maximum damages that they could have received
4  if they prevailed at trial on every aspect of their claims. Dunn Decl. ¶ 20. The
5  percentage of recovery is well within the range that courts approve. *See, Flores*,
6  2:14 Civ. 02900-AB-E, Dkt. 121 (C.D. Cal. May 11, 2016); *Goodwin*, 8:14 Civ.
7  00866-JLS-JCG, Dkt. 66, pp. 5-6 (C.D. Cal. Nov. 2, 2015) (approving recovery of
8  24% to 51% of maximum); *Ma v. Covidien Holding, Inc.*, 12 Civ. 02161-DOC
9  (RNBx), 2014 WL 360196, at *5 (C.D. Cal. 2014) (9.1% of the total value of the
10  action was "within the range of reasonableness"); *Jones v. Agilysys, Inc.*, 12 Civ.
11  03516 SBA, 2014 WL 2090034, at *2 (N.D. Cal. May 19, 2014) (approving
12  settlement of between 30% to 60% of recoverable damages); *Ambrosino*, 2014 WL
13  3924609, at *2 (S.D. Cal. Aug. 11, 2014) (finding recovery of 47% of maximum
14  damages is a fair compromise). Moreover, the actual recoveries under the settlement
15  range from $3,695.77 to $56,029.26. Dunn Decl. ¶ 19. Such recoveries are well
16  above average recoveries in wage-and-hour actions, and especially notable because
17  a significant portion of the claims were in the FLSA's third year. *See*, NERA
18  Economic Consulting, "Trends in Wage and Hour Settlements: 2015 Update,"
19  http://www.nera.com/publications/archive/2015/trends-in-wage-and-hour-
20  settlements-2015-update.html, (the overall average per plaintiff settlement value in
21  wage-and-hour settlements during the period 2007-2015 was $1,097).

22      Not only does the settlement recover a significant amount for each Class
23  Member and a large percentage of their total possible claim, it also provides them
24  with a recovery without having to go through a prolonged litigation process and bear
25  the risks of being unsuccessful. Accordingly, the settlement amount is fair and
26  reasonable. *Flores*, 2:14 Civ. 02900-AB-E, Dkt. 121 (C.D. Cal. May 11, 2016).
27
28

### 4.      The Settlement's Release Provision Is Proper

Courts also review the scope of the release in evaluating whether the settlement is reasonable. If the release tracks the breadth of the allegations in the action then courts find that the release is proper. *Goodwin*, 8:14 Civ. 00866-JLS-JCG, Dkt. 66, p. 6 (C.D. Cal. Nov. 2, 2015); *Ambrosino*, 2014 WL 3924609, at *2 (S.D. Cal. Aug. 11, 2014) (finding that the revised release "appropriately track[ed] the breadth of Plaintiffs' allegations"). Here, the release is narrowly tailored to the claims that were raised or could have been raised in the case. Dunn Decl. ¶ 18. Class Members will release only their claims related to Swift's failure to pay overtime wages. *Id.* Further, the release only extends until the date that they signed the settlement agreement. *Id.* Thus, the release confirms that the settlement is fair and reasonable.

### C.      The Service Awards to the Named Plaintiffs Are Fair And Reasonable

Like *Flores,* the settlement provides for service payments of $10,000 each to the Named Plaintiffs, who participated in the prosecution of the claims and the negotiation of settlement. "Incentive awards are fairly typical in class action cases [and] are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *Espenscheid v. DirectSat USA, LLC,* 688 F.3d 872 (7th Cir. 2012) (incentive awards are appropriate in FLSA collective actions for the same reasons they apply in Rule 23 class actions).

Named Plaintiffs Castro and Nicholson represented the CSRs by spending considerable time working with Plaintiffs' counsel educating counsel on CSR's job duties, scheduling, and compensation, developing and then amending the complaint, moving for FLSA class certification, challenging Swift's efforts to force class

members to arbitration, modeling damage calculations, participating in discovery and settlement negotiations, including attending and participating in the Parties' mediation, and ultimately concluding a successful settlement for the class. Although trial was not necessary, they provided testimony in support of Plaintiffs' motion to certify the FLSA class and were prepared to testify at trial. Dunn Decl. ¶ 21. Castro and Nicholson also bore the risk of retaliation by publicly bringing claims against a major industry player. *Stuart v. Radioshack Corp.*, 07 Civ. 4499 EMC, 2010 WL 3155645, at \*7 (N.D. Cal. Aug. 9, 2010) (named plaintiffs bear "the risk to the class representative in commencing suit, both financial and otherwise [and] the notoriety and personal difficulties encountered by the class representative."); *see also*, *Velez v. Majik Cleaning Service, Inc.*, 03 Civ. 8698(SAS)(KNF), 2007 WL 7232783, at \*7 (S.D. N.Y. June 25, 2007) (in the employment context in particular, a named plaintiff takes a significant risk to her reputation in the industry).

Together, Castro and Nicholson's efforts allowed 20 CSRs to recover unpaid overtime wages. The service payment is the same amount awarded by this court in *Flores*. The service payments sought here are lower than other awards approved by other federal judges in this Circuit. *See, e.g.*, *Stevens v. Safeway, Inc*., 2:05 Civ. 01988-MMM-SH, Dkt. 338, p. 20 (C.D. Cal. Feb. 25, 2008) (approving service payments of $20,000 and $10,000 in an FLSA collective action settlement); *Graham v. Overland Solutions, Inc.*, 10 Civ. 0672 BEN, 2012 WL 4009547, at \*8 (S.D. Cal. Sept. 12, 2012) (awarding $25,000 to each named plaintiff); *Lewis*, 08 Civ. 2670, Dkt. 315, p. 4 (N.D. Cal. April 29, 2011) (approving service payments in the amount of $22,000 and $20,000); *Glass v. UBS Fin. Services, Inc.*, 06 Civ. 4068 MMC, 2007 WL 221862, at \*17 (N.D. Cal. Jan. 26, 2007) *aff'd*, 331 Fed. Appx. 452 (9th Cir. 2009 (unpublished)) (approving enhancement awards of $25,000 each for four named plaintiffs in a Rule 23 wage and hour settlement); *Curtis-Bauer v. Morgan Stanley & Co. Inc.*, C-06-3903 TEH, 2008 U.S. Dist. LEXIS 91465, at \*3 (N.D. Cal. Oct. 22, 2008) (approving a $25,000 service award to named plaintiff in

employment discrimination class action settlement); *Garner v. State Farm Mut. Auto. Ins. Co.*, 08 Civ. 1365 CW (EMC), 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) ("Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more") (collecting cases); *Glass*, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007) aff'd, 331 F. App'x 452 (9th Cir. 2009) (approving payments of $25,000 to each named plaintiff); and *Satchell v. Fed. Express Corp.*, C-03-2659 SI, C-03-28 SI, 2007 WL 1114010, at *5-6 (N.D. Cal. Apr. 13, 2007) (preliminarily approving awards of up to $30,000 each to class representatives and up to $5,000 each to 18 class members who signed declarations and were deposed). Moreover, the total amount of service awards—$20,000—is less than 2% of the total settlement value, including the arbitrations.

Not only are the service awards well within the norm of those regularly awarded, all of the Plaintiffs (including the 13 arbitration Plaintiffs) were informed of the service payments and approved them by signing their settlement agreements without objection. Dunn Decl. ¶ 17.

## III.   THE COURT SHOULD APPROVE THE AGREED UPON ATTORNEYS' FEES AS REASONABLE

Because the FLSA is a remedial statute designed to protect workers and guarantee that minimum labor standards are applicable across the economy, fair compensation for attorneys who take on such litigation furthers the FLSA's purpose. *See A.H. Phillips v. Walling,* 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective of ensuring that every employee receives "a fair day's pay for a fair day's work"). Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discourage future misconduct of a similar nature. *See Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper,* 445 U.S. 326, 338-39 (1980). Section 216(b) of the FLSA provides that where an employee prevails in an action, attorneys' fees under FLSA are mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261, fn. 34

(1975); *Yue Zhou v. Wang's Restaurant*, 05 Civ. 0279 PVT, 2007 WL 2298046, 1 (N.D. Cal. Aug. 8, 2007) ("Because a court supervised settlement of FLSA overtime claims is ultimately reduced to a judgment, under the FLSA an award of reasonable fees is mandatory.").

The Court has discretion to approve fees as a percentage of a settlement fund, so long as the award is reasonable. *Elliott v. Rolling Frito-Lay Sales, LP*, 11 Civ. 01730 DOC, 2014 WL 2761316, at *9 (C.D. Cal. June 12, 2014); *Campbell v. C.R. Eng., Inc.,* 2:13 Civ. 00262, 2015 WL 5773709, at *6 (D. Utah Sept. 30, 2015) (applying percentage of the fund method for FLSA collective action). Attorneys' fees of one-third of the settlement fund in this case are reasonable.

As per the fee agreement Class Members struck with Plaintiffs' Counsel, attorneys' fees are one-third of the total settlement, $110,538. Dunn Decl. ¶ 16. Each Class Member is allocated a prorated share of fees and costs based on their individual recoveries. Dunn Decl. ¶ 17.

## A.    The Attorneys' Fees Are Reasonable Because All the Plaintiffs Agreed to Them

As a preliminary matter, attorneys' fees equal to one-third of the settlement fund are reasonable because all the Plaintiffs agreed to pay them when they joined the action and subsequently approved the actual amount fees when they signed their settlement agreements. Not only did each individual settlement include the specific amount of fees and costs attributed to that Class Member, but the settlement agreements were accompanied by a letter from Plaintiffs' Counsel explaining the allocation of the settlement fund including the amount of fees and costs. All of the Plaintiffs signed and returned their settlement agreements. Dunn Decl. ¶ 19. *Ambrosino*, 2014 WL 3924609, at *2 (S.D. Cal. Aug. 11, 2014); *Banales v. Autoclaims Direct, Inc.,* 3:11 Civ. 02914, Dkt. 63, p. 5 (Dec. 20, 2012) ("the Court notes that each Plaintiff was involved in the settlement process, and each has reviewed and agreed to the settlement terms.")

## B. Fees of One Third of the Settlement Fund Are Reasonable

Courts regularly find that one-third of a settlement fund is a reasonable fee recovery in FLSA cases. *See, e.g.*, *Flores*, 2:14 Civ. 02900-AB-E, Dkt. 121 (C.D. Cal. May 11, 2016) (awarding fees in the amount of one-third of the settlement); *Smith v. Alamo Claim Service, et al.,* 1:13 Civ. 01481, Dkt. 179 (C.D. Ill. Nov. 16, 2016) (awarding fees of one-third to Getman, Sweeney & Dunn); *Goodwin*, 8:14 Civ. 00866-JLS-JCG, Dkt. 66, pp. 6-7; *Ambrosino*, 2014 WL 3924609, at *2 (S.D. Cal. 2014) (awarding fees of 33.3% in an FLSA settlement); *Boyd v. Bank of Am. Corp.*, 13 Civ. 0561-DOC, 2014 WL 6473804, at *12 (C.D. Cal. Nov. 18, 2014) (same); *Rodriguez v. SGLC Inc.*, 2:08 Civ. 1971-MCE-KJN, 2014 WL 229221, at *2 (E.D. Cal. Jan. 17, 2014) (approving attorneys' fees in the amount of 34% of the settlement). While the Ninth Circuit recognizes a loose benchmark of 25% of a fund as attorneys' fees for Rule 23 class actions where the settlement involves passive plaintiffs, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015), "in most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, 08-01520 SC, 2009 WL 248367, at *3 (N.D. Cal. Feb. 2, 2009); *see also Vandervort v. Balboa Capital Corp.*, 8 F.Supp.3d 1200, 1209 (C.D. Cal. 2014) ("in smaller cases—particularly where the common fund is under $10 million—awards more frequently exceed the benchmark"). Moreover, FLSA collective action settlements are different from Rule 23 classes in that each Plaintiff has joined the action and there are no passive plaintiffs. *Ambrosino*, 2014 WL 3924609, at *2 (S.D. Cal. 2014) (finding 33.3% attorneys' fees reasonable in an FLSA settlement where "each plaintiff has approved this amount"). Here, all the Plaintiffs agreed to a one-third contingency and reaffirmed the fees in executing their settlement agreements.

Courts in this Circuit consider several factors to determine if a percentage fee award is reasonable, including

1    (1) the result obtained; (2) counsel's efforts, experience, and skill; (3)

2    the complexity of the issues; (4) the risks of non-payment assumed by

3    counsel; (5) the reaction of the class; (6) non-monetary benefits, such

4    as clarification of certain points of law; and (6) comparison with the

5    lodestar.

6    *Khanna v. Intercon Sec. Sys., Inc.,* 2:09 Civ. 2214 KJM EFB, 2014 WL 1379861, at

7    *12 (E.D. Cal. Apr. 8, 2014) *order corrected*, 2:09 Civ. 2214 KJM EFB, 2015 WL

8    925707 (E.D. Cal. Mar. 3, 2015).

9        The Court should approve the agreed-upon fees because Plaintiffs' Counsel

10   achieved an excellent result for the Plaintiffs in this case. The Class Members'

11   recoveries average 46% of the greatest possible recovery and the average recovery

12   here is far greater than the average FLSA recovery nationwide. Not only was the

13   result excellent, but Counsel achieved it less than ten months from filing the

14   complaint.

15       Courts throughout the country have recognized Plaintiffs' Counsel's skill and

16   experience in FLSA litigation. *See, e.g.*, *Banales v. Autoclaims Direct, Inc.*, 3:11

17   Civ. 02914, Dkt. 63, p. 4 (S.D. CA, Dec. 20, 2012) ("Plaintiffs' counsel have

18   significant experience in wage-and-hour litigation"); *Bredbenner v. Liberty Travel,*

19   *Inc.*, 09 Civ. 1248 MF, 2011 WL 1344745, at *20 (D. N.J. Apr. 8, 2011) ("Based on

20   the Court's experience in supervising this litigation, [Getman, Sweeney & Dunn]

21   has demonstrated the utmost skill and professionalism in effectively managing these

22   consolidated actions and bringing them to a successful conclusion."); *see also*, Dunn

23   Decl. ¶ 23. Counsel expended significant efforts litigating this case and

24   simultaneously litigating 13 individual arbitrations throughout the country. It was

25   only through these efforts that Counsel was able to achieve a favorable settlement

26   for all the Class Members. Dunn Decl. ¶ 24.

27       This case involved complex factual and legal questions, involving not only

28   FLSA issues, but complex procedural issues regarding collective litigation and

1   arbitration. *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 743 (1981)

2   ("FLSA claims typically involve complex mixed questions of fact and law"). In

3   addition to the FLSA claims, Class Members brought individual claims under wage-

4   and-hour laws of two different states. Swift raised 27 affirmative defenses, many

5   raising complex issues of fact and law. The motions for FLSA certification and to

6   compel arbitration raised complex legal issues. The case also involved complex

7   issues regarding the discovery and analysis of electronically stored information.

8   Dunn Decl. ¶ 25. Given the complexity and number of legal and factual questions in

9   the case, these factors strongly support approving the one-third contingency fee

10   agreement.

11       The fees sought are reasonable because Plaintiffs' Counsel took substantial

12   risk in taking on the representation. Plaintiffs' Counsel did not receive any fees for

13   litigating the case or receive reimbursement for their out of pocket costs. Plaintiffs'

14   counsel alone undertook the financial risk of unsuccessful litigation. Under the

15   terms of the agreement, if Plaintiffs had been unsuccessful, Plaintiffs' Counsel

16   would not have recovered any fees or costs. Counsel stood to gain nothing in the

17   event the case was unsuccessful and would have lost the firm's investment in the

18   case, overhead and salaries required to pay attorneys and paralegals with excellent

19   credentials and experience. Any loss in compensation is even more significant

20   because Getman, Sweeney & Dunn is a relatively small firm, consisting of only six

21   attorneys. Dunn Decl. ¶ 26. *Boyd*, 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18,

22   2014) ("Firms of this size face even greater risks in litigating large class actions with

23   no guarantee of payment.").

24       One-third fee recovery is reasonable because all of the Class Members who

25   opted-in agreed to it when they joined the case and reaffirmed that agreement by

26   signing their individual settlement agreements. Thus the unanimous positive

27   reaction from the entire class favors approval. *Ambrosino*, 2014 WL 3924609, at *2

28   (S.D. Cal. Aug. 11, 2014); *Banales v. Autoclaims Direct, Inc.,* 3:11 Civ. 02914, Dkt.

63, p. 5 (Dec. 20, 2012) ("the Court notes that each Plaintiff was involved in the settlement process, and each has reviewed and agreed to the settlement terms."); *Flores*, 2:14 Civ. 02900-AB-E, Dkt. 121 (C.D. Cal. May 11, 2016) (same).

Plaintiffs' Counsel's lodestar establishes that fees of one-third of the settlement fund are reasonable. The lodestar is the reasonable hourly rate for the work performed multiplied by the number of hours reasonably expended on the litigation. *Costa v. Commissioner of Social Sec. Admin.*, 690 F.3d 1132, 1136 (9th Cir. 2012). Counsel's lodestar in this case is more than $124,000. Dunn Decl. ¶ 27; McGlaze Decl. ¶ 13. It is predominantly calculated based on lead Counsel's hourly rates ranging from $95 for clerical work to $590 for Michael J.D. Sweeney, an attorney, who led the *Flores* litigation, with more than 20 years of experience. Dunn Decl. ¶ 27; *see also* McGlaze Decl. ¶ 12 (different rates for local counsel's work). Such rates have been approved as reasonable in this District in wage-and-hour case. *Boyd,* 2014 WL 6473804, at *11 (C.D. Cal. Nov. 18, 2014) (finding $600 per hour for partner who graduated from law school in 2000; $500 for an associate who graduated in 2002; $450 per hour for an associate who graduated in 2007, $350 per hour for 2012 law school graduate; and $150 per hour for paralegals reasonable in wage and hour case); *Elliott v. Rolling Frito-Lay Sales, LP*, 11 Civ. 01730 DOC, 2014 WL 2761316, at *10 (C.D. Cal. June 12, 2014) (finding hourly rates between $700 and $500 reasonable in a wage-and-hour case). Moreover, Counsel's billing rates are regularly approved by federal district courts throughout the country. Dunn Decl. ¶ 28; McGlaze Decl. ¶¶ 3, 4, and 12.

The amount of work Counsel expended litigating these claims is reasonable too. To date Plaintiffs' Counsel spent more than 230 attorney hours and 148 paralegal and clerical hours bringing the action to a successful conclusion, and additional work will be required to carry out the settlement process. As discussed above, this matter involved many complex factual and legal issues under both state and federal laws, litigation of a federal court FLSA collective action and thirteen

individual arbitrations, and sophisticated settlement negotiations. All of Counsel's work was reasonably expended in bringing this case to a successful conclusion. Dunn Decl. ¶ 29. *Costa*, 690 F.3d at 1136 (9th Cir. 2012) (courts should defer to the "winning lawyer's professional judgment as to how much time he was required to spend on the case.") *citing Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Fees of one third of the settlement fund, $110,538, represent 89% of Plaintiffs' Counsel's lodestar of more than $124,000. Courts regularly approve lodestar multipliers to reflect the risks in contingency cases. Such an enhancement "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002). For these reasons, courts routinely enhance lodestar amounts based on multipliers ranging from 2 to 4 or even higher. *See id.* (approving multiplier of 3.65); *Boyd*, 2014 WL 6473804, at *11 (C.D. Cal. Nov. 18, 2014) (approving multiplier of 2.58); *Van Vranken v. Atl. Richfield Co.,* 901 F.Supp. 294, 298 (N.D. Cal. 1995) (noting that multipliers in the 3-4 range are common in class action lodestar awards); *Craft v. Cnty. of San Bernardino*, 624 F.Supp.2d 1113, 1125 (C.D. Cal. 2008) (awarding multiplier of 5.2 and collecting cases with cross-check multipliers ranging from 4.5 to 19.6). And when the multiplier is negative, this further bolsters that the requested attorneys' fees are reasonable and fair. *Covillo v. Specialtys Café*, 11 Civ. 00594 DMR, 2014 WL 954516, at *7 (N.D. Cal. Mar. 6, 2014).

Accordingly, the Court should approve the agreed upon fees of one-third the settlement fund as reasonable. *Flores*, 2:14 Civ. 02900-AB-E, Dkt. 121 (C.D. Cal. May 11, 2016).

**C.    Costs**

The Settlement's provision for reimbursement of costs is appropriate. "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *In re Media Vision Tech Sec. Litigs.*, 913 F.Supp. 1362, 1366 (N.D. Cal. 1996) (*citing Mills v. Electric Auto-Lite Co*., 396 U.S. 375, 391-92 (1970)). To be reimbursable, requested costs must be relevant to the litigation and reasonable in amount. *In re Media Vision Tech Sec. Litigs.*, 913 F.Supp at 1366; *cf. In re Immune Response Sec. Litig.*, 497 F.Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (holding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in class action litigation).

Plaintiffs' Counsel has already incurred more than $2,866 in expenses such as filing fees, service of the complaint, copies, travel, postage, and mediation fees and there will be additional costs. All of these costs were necessary to the prosecution of the litigation and were incurred reasonably, and Counsel anticipates incurring additional costs related to the case. Dunn Decl. ¶ 30 ($2,464.47 in costs); McGlaze Decl. ¶ 14 ($1,175.80 in costs). Each settlement agreement provided the specific share the Plaintiff was responsible for, and all of the Plaintiffs approved of the counsel's costs. Accordingly, these costs are reimbursable. *Ambrosino*, 2014 WL 3924609, at *2 (S.D. Cal. Aug. 11, 2014); *Flores*, 2:14 Civ. 02900-AB-E, Dkt. 121 (C.D. Cal. May 11, 2016).

**IV.    CONCLUSION**

Plaintiffs respectfully request that the Court approve the agreed upon settlement, including the allocations to the Plaintiffs, the service awards, and the attorneys' fees and costs.

Dated: March 17, 2017                    Respectfully Submitted,


                                    By:  /s/ Matt Dunn
                                         Matt Dunn
                                         Lesley Tse
                                         Getman, Sweeney & Dunn, PLLC
                                         9 Paradies Lane, New Paltz, NY 12561
                                         Tel: (845) 255-9370
                                         mdunn@getmansweeney.com
                                         ltse@getmansweeney.com

                                         *Attorneys for Plaintiffs*